United States District Court
Southern District of Texas
**ENTERED**
August 22, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| PARIS RICHARDSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00176 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Paris Richardson ("Petitioner"), proceeding *pro se*, is a Texas Department of Criminal Justice (TDCJ) inmate currently incarcerated at the Polunsky Unit in Livingston, Texas.  *See* Doc. No. 1.  Petitioner has filed this habeas petition pursuant to 28 U.S.C. § 2254 against Bobby Lumpkin ("Respondent"), challenging his conviction for murder.  Respondent filed a response, which the undersigned construes as a motion for summary judgment (Doc. Nos. 14 and 14-1), and Petitioner did not respond.  This case has been referred to the undersigned for pretrial case management and recommendations regarding dispositive matters pursuant to 28 U.S.C. § 636.  For the reasons discussed below, the undersigned recommends that Respondent's motion for summary judgment be GRANTED and that Petitioner's application for habeas relief be DENIED.  Additionally, the undersigned recommends that a certificate of appealability be DENIED.

### A. Jurisdiction.

This Court has jurisdiction over this habeas petition pursuant to 28 U.S.C. § 1331.  A habeas action may be filed either in the district in which the petitioner is in custody or in the

district in which the petitioner was convicted and sentenced.  28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).  In this case, Petitioner was convicted in the 319th District Court of Nueces County, Texas.  (Doc. No. 14-1, pp. 20-21.)  Nueces County is located in the Corpus Christi Division of the Southern District of Texas.  *See* 28 U.S.C. § 124(b)(6).  Thus, this matter is properly before this Court.

### B.  Proceedings.

#### 1.  Petitioner is convicted in state court.  He appeals, unsuccessfully.

Petitioner was convicted in Texas state court, contrary to his plea, of murder.  (Doc. No. 14-1, pp. 20-21.)  He was sentenced to 50 years' imprisonment.  *Id.* at 20.  Texas' Thirteenth Court of Appeals recounted the relevant facts:

> In February 2017, [Petitioner] went to the apartment residence of seventeen-year old, Anthony Rodriguez to buy marihuana.  The victim, seventeen-year old Timothy Echols, was inside the apartment with a number of other relatives and friends of Mr. Rodriguez.  There was an argument that resulted in [Petitioner] shooting Mr. Echols with a pistol and fleeing the apartment.  Mr. Echols died from a gunshot wound through the heart.  At trial, [Petitioner] claimed self-defense.

*Richardson v. State*, No. 13-18-00297-CR, 2019 WL 3820412, at *1 (Tex. Ct. App. – Corpus Christi-Edinburg Aug. 15, 2019) (pet. refused); *see also* Doc. No. 13-19, p. 2.

On appeal, Petitioner, through his appellate counsel, complained of improper argument by the prosecutor, and asserted that the trial court should have declared a mistrial *sua sponte* or instructed the jury to disregard the remarks.  The court of appeals found that any error was forfeited and affirmed.  *Richardson v. State*, 2019 WL 3820412, at *1.  The Texas Court of Criminal Appeals, the state's highest criminal court, denied Petitioner's request for discretionary review on February 14, 2021.  (Doc. No. 13-33.)  Petitioner's conviction did not seek certiorari in the United States Supreme Court, so his conviction became final.

### *2. Petitioner files a state habeas action, but is denied relief.*

On March 8, 2022, Petitioner timely filed an application for a writ of habeas corpus. (Doc. Nos. 13-57, 13-58.)  In that action, Petitioner lodged four grounds for relief:

- Denial of his right to due process and a fair and impartial jury because the trial court allegedly "took up a juror note" from a juror without knowledge by Petitioner or trial defense counsel (Doc. No. 13-57, pp. 6-7);

- Deprivation of effective assistance of counsel by the trial court for failing to disclose the juror note to Petitioner and his trial defense counsel (Doc. No. 13-57, pp. 8-9);

- Ineffective assistance of trial defense counsel for failing to obtain expert forensic examination of the path of the fatal shot and the location from which it was fired (Doc. No. 13-57, p. 10); and

- Ineffective assistance of appellate defense counsel for failing to raise as error on direct appeal the deprivation of counsel stemming from the juror note (Doc. No. 13-57, pp. 12-13).

The juror note read:

> I have been accused of personal bias and attacked for it through this entire deliberation.  I'm not the one being judged.  There is no way we will reach an agreement due to these attacks.

(Doc. No. 13-62, p. 2; *see also* Doc. No. 13-3, p. 128.)

The state resisted Petitioner's action in a written brief, arguing, among other things, that Petitioner did not raise the juror note issue on direct appeal and thus could not raise that issue for the first time on habeas review.  (Doc. No. 13-63, pp. 2-3.)  The state also contended that trial and appellate defense counsel were not constitutionally ineffective.  *Id.* at 6-7, 10, 13-14.  The state's response included affidavits from both trial and appellate defense counsel.  *Id.* at 23-26.

Trial defense counsel's affidavit stated, with regard to the juror note: "This case was tried almost 4 years ago.  I do not remember whether or not the juror note was revealed to me or not.  I do know that the jury was polled after the verdict and they all indicated that the verdict was their individual verdict."  (Doc. No. 13-63, p. 23.)

The trial court did not conduct a hearing on Petitioner's habeas action, finding that no hearing or further expansion of the record was necessary.  (Doc. No. 13-64.)  The trial court issued a "Findings of Fact, Conclusions of Law, & Recommendation" that stated:

> [T]he assertions contained in the State's Original Answer are correct.  The Court finds that [Petitioner] has failed to show that either his trial or appellate counsels performed deficiently or that he was prejudiced by either his trial or appellate counsels' actions.  The Court finds that trial and appellate counsels provided effective assistance of counsel under *Strickland v. Washington*.  Further the Court finds that [Petitioner] failed to prove the remaining allegations in his habeas application.  The Court recommends that habeas corpus relief be DENIED.

*Id.*  The Texas Court of Criminal Appeals denied habeas relief "without written order" on June 29, 2022.  (Doc. No. 13-65.)

### 3.  *Petitioner's current § 2254 action.*

Petitioner filed this § 2254 action on or about July 28, 2022.[1]  (Doc. No. 1.)  Petitioner's action was received and filed by the Clerk of Court on August 1, 2022.  *See id.*

In this § 2254 action, Petitioner advances four grounds for relief:

- Ground 1:  Petitioner was denied due process and deprived of his right to a fair and impartial jury trial under the Fifth, Sixth, and Fourteenth Amendments "where the trial court took up a juror note from Lori L. McCoy, a juror without informing Applicant or defense counsel."  (Doc. No. 1, pp. 5-7);

---

[1]  Petitioner's habeas action is dated July 26, 2022.  (Doc. No. 1, p. 15.)  The postmark on the envelope in which the action was mailed to the Court is July 28, 2022.  (Doc. No. 1-1, p. 2.)

- Ground 2:  Petitioner was deprived of his right to counsel during jury deliberation, a critical stage of his jury trial, in that Petitioner and trial defense counsel "were both kept in the dark" regarding the juror note (Doc. No. 1, pp. 7-8);

- Ground 3:  Trial defense counsel was constitutionally ineffective for failing to obtain expert forensic examination of the path of the fatal shot and the location from which it was fired (Doc. No. 1, pp. 8-10); and

- Ground 4:  Appellate defense counsel was constitutionally ineffective for failing to raise on direct appeal the deprivation of trial defense counsel's assistance stemming from the juror note, resulting in procedural default of that issue on state habeas review (Doc. No. 1, pp. 10-12).

Petitioner does not specifically articulate the relief he seeks.  *See*, *e.g.*, Doc. No. 1, p. 16.  In his § 2254 action, however, he mentions that the failure to raise the juror note issue prevented the filing of a motion for new trial.  *E.g.*, *id.* at 9, 10.[2]

The undersigned ordered service of process.  (Doc. No. 9.)  Respondent then filed an answer, along with certain state court records.  (Doc. Nos. 13, 14, 14-1.)  In his motion, Respondent argues that Petitioner's action is procedurally defaulted pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and requests that the Court deny the petition with prejudice.  (Doc. No. 14, pp. 9-10.)  Respondent alternatively argues that Petitioner fails to meet his burden of establishing entitlement to federal habeas relief.  *Id.* at 10-24.  Finally, Respondent urges the Court to deny a certificate of appealability.  *Id.* at 24.  Although afforded

---

[2] Petitioner likewise did not specify any particular relief sought in his state habeas action.  *See generally* Doc. No. 13-57.

the opportunity to do so, *see* Doc. No. 15, Petitioner did not file a response to Respondent's pleading.

Further facts necessary to the disposition of this action are set forth in the discussion below.

### C. AEDPA's deferential standard applies to Petitioner's action.

The initial question for review is what legal standard applies to Petitioner's action. The answer depends on whether the Texas Court of Criminal Appeals adjudicated Petitioner's state habeas claims on the merits.

If Petitioner's federal habeas claims were presented to the state court and denied on the merits, then AEDPA's deferential standard of review applies.

> Under that standard, a federal court may not grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the state court's adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

*Flores v. Lumpkin*, 72 F.4th 678, 682 (5th Cir. 2023) (quoting 28 U.S.C. § 2254(d)). Under AEDPA, the state court's "determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A state court's findings of fact must be presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), and its application of clearly established law is not unreasonable unless it is "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Flores*, 72 F.4th at 683 (quoting *Richter*, 562 U.S. at 103).

If Petitioner's federal claims were not presented to the state court and denied on the merits, or if Petitioner failed to comply with state procedures, then the federal claims are procedurally defaulted, and the federal court "will, in all but the most extraordinary cases, decline to review" them. *Nelson v. Lumpkin*, 72 F.4th 649, 656 (5th Cir. 2023) (citing *Shinn v. Ramirez*, __ U.S. __, 142 S. Ct. 1718, 1732 (2022)). Petitioner could overcome that procedural default only "if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Id.* (quoting *Davila v. Davis*, 582 U.S. 521, 528 (2017), in turn quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977) and *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *see also McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (petitioner bears the burden of overcoming procedural bar).

The Texas Court of Criminal Appeals "denied without written order" Petitioner's bid for state habeas relief. *See* Doc. No. 13-65. "Denial" of a Texas state habeas claim means that the Texas Court of Criminal Appeals addressed and rejected the merits of the claim. By contrast, "dismissal" of a habeas claim means that the court declined to consider the claim for reasons unrelated to the claim's merits. *See Craaybeek v. Lumpkin*, 855 F. App'x 942, 945-46 (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)); *see also Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The Court of Criminal Appeals' "denial" of Petitioner's state habeas action signifies that it considered Petitioner's state claims on the merits and rejected them. As well, additional evidence indicates that Petitioner's state claims were considered on the merits and rejected. For example, the state trial court's "Findings of Fact, Conclusions of Law, & Recommendation" stated:

> The Court finds that [Petitioner] has failed to show that either his trial or appellate counsels performed deficiently or that he was prejudiced by either his trial or appellate counsels' actions. The Court finds that trial and appellate counsels provided effective assistance of counsel under *Strickland v. Washington*. Further the Court finds that [Petitioner] failed to prove the remaining allegations in his habeas application.

Doc. No. 13-64.

Thus, the undersigned concludes that the deferential standard set out in the AEDPA applies to this Court's review. *See Flores v. Lumpkin*, 72 F.4th 678, 682-83 (5th Cir. 2023) (citing *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *see also Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) ("Section 2254(d) applies even where there has been a summary denial.").

Respondent resists this conclusion in part, with regard to Petitioner's due process claim (Ground 1, which alleged denial of due process because the trial court allegedly "took up" the juror note without informing Petitioner or trial defense counsel). Respondent contends that the due process claim is procedurally barred because the state habeas court purportedly denied relief because of procedural default. (Doc. No. 14, pp. 9-10.) In response to this claim, the State argued to the trial court that Petitioner could not raise the due process claim because he failed to raise that issue on direct appeal. *See* Doc. No. 13-63, pp. 2-3. Because the trial court thereafter stated, among other things, that "the assertions in the State's Original Answer are correct," Respondent argues, the issue was never considered on the merits. *See* Doc. No. 14, pp. 9-10.

The undersigned disagrees and concludes that this issue was indeed considered on the merits. First, neither the trial court's opinion nor the Texas Court of Criminal Appeals'

disposition states that Petitioner's due process issue was rejected because of procedural default. Procedural default is not to be inferred: the state court must clearly and expressly base its dismissal of a petitioner's claim on a state procedural rule that provides an independent and adequate basis for dismissal. *See Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010) (citing *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997)). That did not occur in this case: the trial court's opinion did not clearly and expressly find a procedural bar, and it recommended "denial," not "dismissal." Second, the trial court stated that Petitioner "failed to prove the remaining allegations [that is, the claims other than those alleging ineffective assistance of trial or appellate counsel] in his habeas application." (Doc. No. 13-64.) This language indicates that the trial court considered Petitioner's due process issue and concluded that Petitioner had failed to satisfy his burden of demonstrating entitlement to relief. Finally, the Texas Court of Criminal Appeals "denied" Petitioner's application (and did not "dismiss" it), signifying in accordance with Texas habeas jurisprudence that it considered the issue on the merits and rejected it. The undersigned therefore concludes that the Texas Court of Criminal Appeals adjudicated all of Petitioner's claims on the merits and rejected them. AEDPA's deferential standard of review therefore applies.[3]

---

[3] For this reason, the undersigned concludes that no procedural default occurred, and that it is therefore unnecessary to examine whether appellate defense counsel's alleged ineffectiveness could serve as "cause" to excuse any procedural default. *See* Doc. No. 1, p. 10; Doc. No. 14, p. 10. Should the district court disagree with this analysis, however, and conclude that Petitioner's due process claim was procedurally defaulted (Ground One), then the undersigned alternatively concludes that appellate counsel's alleged ineffectiveness could not serve as "cause." *See Davila*, 582 U.S. at 524-25 (distinguishing *Martinez v. Ryan*, 556 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013) and holding that ineffective assistance of appellate defense counsel does not constitute exception to procedural bar). If Petitioner's due process claim is procedurally defaulted and cannot be excused by appellate counsel's ineffectiveness, then that claim is barred altogether in this § 2254 action. *See Nelson*, 72 F.4th at 656. Ultimately, as discussed later in the main text, it does not matter whether the due process claim is procedurally defaulted, because the issue has no merit.

Generally, Federal Rule of Civil Procedure 56, which governs summary judgment procedure, applies with equal force to federal habeas cases. *See Rosales v. Lumpkin*, No. 2:22-cv-00296, 2023 WL 4306704, at *2 (S.D. Tex. May 24, 2023) (Libby, M.J.), *adopted*, 2023 WL 4303660 (S.D. Tex. June 27, 2023) (citing *Clark v. Johnson*, 202 F.3d 760, 764-65 (5th Cir. 2000)). And ordinarily, Rule 56 requires that disputed facts be construed in favor of the non-movant (here, Petitioner). *See Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022). But Rule 56 applies only to the extent that it does not conflict with other rules governing federal habeas proceedings. *See Rosales*, 2023 WL 4306704, at *2 (citing *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004)). In this context, Rule 56's presumption is overridden by 28 U.S.C. § 2254(e)(1), which provides that any state court factual findings are presumed to be correct. *See Smith*, 311 F.3d at 668. Thus, unless Petitioner can rebut by clear and convincing evidence the presumption of correctness afforded the state habeas court's factual findings, those findings must be accepted as correct by the federal habeas court.

### D. Analysis: The state court did not act unreasonably in rejecting Petitioner's habeas action.

Review of Petitioner's asserted grounds for relief reveals that the Texas Court of Criminal Appeals' denial was not contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. Nor did that court's denial of state habeas relief result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### 1. *Ground One: Juror note – denial of fair and impartial jury.*

Petitioner argues in Ground One of his § 2254 action that he was denied his due process right to a fair and impartial jury during the trial, in violation of his Fifth, Sixth, and Fourteenth Amendments, because the trial court "took up a note from Lori L. McCoy, a juror without informing [Petitioner] or defense counsel." (Doc. No. 1, p. 5.) Petitioner argues that "no one seems to have any knowledge of the juror note, or how it made its way out [of] the jury room and into the Clerks Record." *Id.* He also claims that the state habeas court wrongly failed to order an evidentiary hearing on the matter. *Id.* at 7.

The juror note stated:

> I have been accused of personal bias and attacked for it through this entire deliberation. I'm not the one being judged. There is no way we will reach an agreement due to these attacks.

(Doc. No. 13-62, p. 2; *see also* Doc. No. 13-3, p. 128.) There is no discussion of the note in the record.

A defendant is entitled to a "jury capable and willing to decide the case solely on the evidence before it." *Chavez v. Cockrell*, 301 F.3d 805, 811 (5th Cir. 2002) (citing *Smith v. Phillips*, 455 U.S. 209, 217 (1982)); *see also* U.S. Const., amend. VI. A federal habeas court must initially presume that the selected jurors were impartial. *Flores v. Lumpkin*, No. H-21-175, 2021 WL 11114116, at *9 (S.D. Tex. Oct. 7, 2021) (Hittner, J.) (citing *Smith*, 455 U.S. at 218). Additionally, jurors are presumed to have followed their oath. *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 224 (2017) (citing *Penry v. Johnson*, 532 U.S. 782, 799 (2001)). Prior to trial, both the prosecution and the defense stated that they had no objection to the jury's empanelment as composed – including Juror McCoy. (Doc. No. 13-7, pp. 127-28.)

Here, Petitioner does not allege that Juror McCoy, or any other member of the jury, was anything but impartial.  He does not claim that Juror McCoy was biased against him.  Nor does he allege the reverse, that Juror McCoy's note was complaining about other jurors' attacking her for being biased in favor of Petitioner.

Petitioner fails to articulate how he was deprived of an impartial jury.  The only indication in the record of any possible lack of impartiality by any juror is the note itself, and that note is ambiguous at best.  The note itself is undated; it is stamped as having been filed on May 8, 2018, but that is the day after the jury rendered its verdict.  *See* Doc. No. 13-12, p. 1 (transcript containing jury verdict, dated May 7).  The note does not indicate whether Juror McCoy was allegedly accused of being biased against Petitioner, or on behalf of him.  Meanwhile, there appears to have been vigorous deliberation in the jury room, as deliberations lasted for "close to five, almost six hours."  (Doc. No. 13-12, p. 66.)  The note does not indicate that Petitioner's jury was not impartial.  At most, it suggests that disagreement in the jury room might have become heated while the jurors debated whether to accept Petitioner's claim of self-defense before they ultimately came to agreement.

Petitioner's claim is essentially that he never had the opportunity to learn any details about the note, because the trial court allegedly addressed that note without notifying Petitioner or trial defense counsel.  (Doc. No. 1, p. 5.)  This, Petitioner claims, deprived him of his right to a fair and impartial jury.  But Petitioner's claim rests on far too shaky a foundation.  Most significantly, trial defense counsel did not confirm that he was not made aware of the note.  (Doc. No. 13-63, p. 23 ("I do not remember whether or not the juror note was revealed to me or not.").  By contrast, trial defense counsel did recall that the jury was polled after the verdict, and

that each juror confirmed his or her vote.  *Id.*; *see also* Doc. No. 13-12, pp. 6-8.  There is no evidence indicating that the trial court failed to make trial defense counsel aware of the note.

Additionally, Petitioner fails to demonstrate that the trial court itself was aware of the note, such that it could have addressed that note without informing the defense.  Respondent, through counsel, "found nothing in the record to indicate when McCoy's note was written, when or to whom it was given, how it came to be filed, or that the trial court was aware of it to notify counsel."  (Doc. No. 14, p. 12.)

On this record, the Texas Court of Criminal Appeals' resolution of Petitioner's habeas application did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  Nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the district court should deny Petitioner's asserted ground for relief.

### 2. Ground Two: Juror note – deprivation of counsel and evidentiary hearing.

In Ground Two, Petitioner alleges that the trial court kept Petitioner and trial defense counsel "in the dark" with regard to the juror note.  (Doc. No. 1, p. 7.)  Petitioner argues that this failure by the trial court to notify Petitioner and counsel of the note deprived Petitioner of his right to be assisted by counsel during jury deliberations.  *Id.*

A defendant has a right to effective assistance of counsel at all critical stages of the criminal proceeding, and courts may presume that a defendant has suffered unconstitutional prejudice if he or she is "denied counsel at a critical stage of his trial."  *See United States v. Cronic*, 466 U.S. 648, 659 (1984).

Petitioner's argument fails here for the same reason it fails in Ground One: Petitioner does not demonstrate that the trial court itself knew of the note, or that if it did, that the trial court failed to notify trial defense counsel about it.  Petitioner's claim can be rejected on this basis alone.

Additionally, Petitioner's argument fails because there is no Supreme Court authority that jury deliberations constitute a "critical stage" for purposes of *Cronic*.  In other words, the Texas Court of Criminal Appeals' resolution of Petitioner's claim is not contrary to clearly established federal law as determined by the Supreme Court.  *See Payton v. Crow*, No. CIV-19-700-SLP, 2022 WL 2531810, at *7 (W.D. Okla. July 7, 2022) (citing *Smith v. Trammell*, No. CIV-09-293-D, 2014 WL 4627225, at *33-*35 (W.D. Okla. Sept. 16, 2014) (analyzing trial court's communications with jurors without consultation with counsel, noting the "absence of Supreme Court authority that jury deliberations constitute a critical stage," evaluating cases from multiple circuits, finding no consensus on the issue, and concluding for AEDPA purposes that "this is clearly an issue where fairminded jurists could disagree"); *see also Davis v. McCollum*, No. CIV-16-1347-R, 2017 WL 9482506, at *5 & n.8 (W.D. Okla. Sept. 27, 2017).  Thus, even if the trial court had addressed the jury outside the presence of Petitioner and his counsel (there is no evidence that this occurred), § 2254(d)(1)'s standard would not afford relief.

Finally, Petitioner's complaint that the state habeas court failed to grant his requested evidentiary hearing (Doc. No. 1, p. 7) also lacks merit.  An alleged procedural infirmity in a state habeas proceeding is not an independently cognizable ground for relief in a § 2254 action.  *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) ("infirmities in state habeas proceedings do not constitute grounds for relief in federal court … because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself")

14 / 23

(cleaned up).  Nor does it render § 2254(d)'s standard of review inapplicable.  *See Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001) ("a full and fair hearing is not a precondition according to § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review").

For the foregoing reasons, the district court should deny Petitioner's request for federal habeas relief on Ground Two.

### 3. Ground Three: Ineffective assistance: trial defense counsel's failure to obtain a forensic expert.

In Ground Three of his § 2254 action, Petitioner alleges that trial defense counsel was constitutionally ineffective for failing to "obtain expert forensic examination of the path of the fatal shot, and the fact shot was fired inside."  (Doc. No. 1, p. 8.)  Petitioner contends that his counsel[4]

> was so deficient that instead of obtain[ing] expert forensic assistance, counsel attempted to show the jury how the blood dropping got from one point to another using his hunting experience:
>
> Q:  you say you been hunting?
>
> A:  Yes.
>
> Q:  Okay, and I'm assuming you've shot an animal?
>
> A:  Yes, sir.
>
> Q:  Okay, and when you shot an animal what happens to their body when you shoot them?
>
> A:  Usually you'll have a jerk.

---

[4]  In the text of his argument, Petitioner refers here to "appellate counsels performance."  *Id.*  It is apparent, however, that Petitioner means his trial defense counsel's performance, because the passage refers to discourse at trial.

(Doc. No. 1, p. 8 (quoting Doc. No. 13-9, p. 57).)  Petitioner does not allege that he requested that trial defense counsel obtain an expert.

In his affidavit during the state habeas proceeding, trial defense counsel responded to Petitioner's allegation of ineffectiveness:

> From what I can remember, I do not believe there was any fact issues about what actually happened or how it happened.  I believe the only issue[] was whether or not [Petitioner's] belief he was in danger was reasonable.  While I believe that [Petitioner] acted in self defense and I do believe that his belief was reasonable, the jury disagreed.  In fact after the trial, the jury [indicated] to counsel, that they were on the fence about the self defense issue until [Petitioner] testified.  They did not believe him and did not find him credible.  I do not remember if we discussed obtaining an expert or not.

(Doc. No. 13-63, pp. 23-24.)

Courts analyze claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  A claimant must demonstrate that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and that the deficient performance prejudiced the defense.  466 U.S. at 689-94.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 669).  In addition to applying the *Strickland* test, federal habeas courts must review a petitioner's habeas claim "through the deferential lens" of § 2254(d).  *See Cullen*, 563 U.S. at 190.  The federal habeas court must consider not only whether the state court's determination of the *Strickland* question was correct, but also "whether that determination was reasonable – a substantially higher threshold."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  In applying § 2254's standard to Petitioner's ineffectiveness claim, the Court must thus be doubly deferential: the Court must be deferential to the Texas habeas court and to trial defense

counsel.  "As to counsel, we have often explained that strategic decisions – including whether to hire an expert – are entitled to a 'strong presumption' of reasonableness."  *Dunn v. Reeves*, __ U.S. __, 141 S. Ct. 2405, 2410 (2021) (citing *Richter*, 562 U.S. at 104).  Trial defense attorneys have only limited time and resources, and their strategic decisions are particularly difficult because "certain tactics carry the risk of harming the defense by undermining credibility with the jury or distracting from more important issues."  *Id.* (cleaned up).  The burden of rebutting this presumption of reasonableness rests squarely with Petitioner, and "it should go without saying that the absence of evidence cannot overcome it."  *Dunn*, 141 S. Ct. 2410 (citing *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (cleaned up)).  A court may not grant relief if the record does not reveal that counsel took an approach that no competent lawyer would have chosen.  *Id.* (citing *Burt*, 571 U.S. at 23-24).  "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 562 U.S. at 105.

The Court's analysis is "doubly deferential" when, as in this case, the state habeas court decided that counsel performed adequately.  *Burt*, 571 U.S. at 15; *see also Sexton v. Beaudreaux*, __ U.S. __, 138 S. Ct. 2555, 2560-61 (2018) (deference is "near its apex" in such cases).  Put more concretely, the Supreme Court said in *Dunn*, "a federal court may grant relief only if *every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision."  141 S. Ct. at 2411 (citing *Richter*, 562 U.S. at 101) (cleaned up) (emphasis in original).

Petitioner's claim falls far short of the mark.  The evidence at trial indicated that the victim died from a gunshot that entered through the left side of his chest, went through the middle of his heart, and exited through the right-front side of his chest.  (Doc. No. 13-8, pp. 52-53, 60.)  Eyewitness testimony stated that Petitioner pushed in the small apartment's closing door

and shot the victim, who was standing facing sideways from Petitioner and playing a video game.  (Doc. No. 13-10, pp. 49-51, 58, 128-32; Doc. No. 13-11, p. 36.)  By contrast, Petitioner testified that the victim came towards Petitioner and grabbed him by the shoulders and that Petitioner pushed the victim away.  (Doc. No. 13-11, p. 40.)  Petitioner stated that the victim "coming at me and started charging me."  *Id.* at 42.  Petitioner testified that he was scared for his life, so he shot the victim.  *Id.* at 42-43.  On cross-examination, Petitioner was unable to explain "how the bullet went around and then came back in a loop, shot him from the side and then came out the front."  *Id.* at 62.  The cross-examination continued:

> Q: Okay.  So he's charging straight at you and somehow the bullet comes out the front, right?
>
> A.  Yes, sir.

*Id.* at 62-63.

Petitioner offers no evidence or allegation that any expert would have found, let alone testified, that the path of Petitioner's bullet or the location from which it was fired was different from the testimony that was introduced by the prosecution.  Even more importantly, Petitioner also offers no allegation that any such defense expert testimony (whatever it might have been) would have aided Petitioner's claim of self-defense to such a degree that no reasonable lawyer would have failed to obtain that expert.  There was no dispute that Petitioner was inside the apartment when he shot the victim, and Petitioner does not allege that the testimony about the path of the bullet was in any way incorrect.  As trial defense counsel recalled later, there was no fact issue about what happened – the only question was whether Petitioner's self-defense claim was reasonable.  Given Petitioner's version of events, the undersigned cannot conclude that every reasonable lawyer would have presented additional expert evidence in this situation.

Petitioner derides his counsel's cross-examination of the police officer who investigated the scene (Doc. No. 1, p. 8), but taken in context, counsel's questions were reasonable.  In furtherance of the self-defense claim, trial defense counsel attempted to establish that the officer could not establish precisely where the victim was standing in the apartment when he was shot. (Doc. No. 13-9, p. 56.)  A shooting victim, counsel pointed out, might not "automatically start bleeding right away?  … And it might take a second or two, correct?"  *Id.*  The officer replied: "I'm not an expert on that, but I've hunted enough to see blood drop like that."  *Id.*  Counsel continued: "[H]e could have [been] shot and taken a step forward, taken a step back, taken ten steps to the left or the right before the blood hit the ground; right?"  *Id.*  The officer answered in the affirmative.  Counsel also pointed out that the victim could have jerked when he was hit with the bullet.  *Id.* at 56-57.  He then asked the hunting question cited in Petitioner's application, to point out that animals often also jerk when shot, but the prosecutor's objection to that question was sustained.  *Id.* at 57.  Counsel concluded: "But it's possible – there's no way to indicate whether or not that's actually the spot where he was hit, correct?"  (Doc. No. 13-9, p. 57.)  The witness replied: "Not on that evidence alone, no."  *Id.* at 58.  The point of this questioning was to establish that the location of the victim's blood might not indicate where the victim was when Petitioner shot him, thus lending credence to Petitioner's later testimony that the victim was rushing toward Petitioner.  Trial defense counsel's questioning in this area was reasonable and sufficient: expert testimony to make this point was not needed, and trial defense counsel did not perform deficiently by making the point through cross-examination instead.

The undersigned concludes that Plaintiff has failed to overcome the presumption that counsel acted reasonably in not obtaining forensic expert testimony, and that he also fails to overcome the presumption of correctness to which the state habeas court's decision is entitled.

He fails to demonstrate that there was no reasonable basis for the Texas Court of Criminal Appeals to deny relief.  The district court should therefore reject Petitioner's claim.

### 4.  Ground Four: Ineffective assistance of appellate defense counsel.

Finally, Petitioner alleges that his appellate defense counsel was constitutionally ineffective for failing to raise the juror note issue on direct appeal.  This failure, Petitioner says, resulted in a procedural default that prevented the issue from being considered on state habeas review.  (Doc. No. 1, p. 10.)

Claims of ineffective assistance of appellate defense counsel are analyzed using the same *Strickland* standard applied to trial defense counsel.  *See Harper v. Lumpkin*, 64 F.4th 684, 697 (5th Cir. 2023).  "Applying AEDPA deference to *Strickland*'s already deferential standard, we must deny relief if there is any reasonable argument that appellate counsel satisfied *Strickland*'s deferential standard despite failing to make the argument . . . ."  *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (cleaned up).

As discussed above, Petitioner's juror note claims lack merit, and Petitioner has failed to establish that the state habeas court acted unreasonably in rejecting them.  Appellate counsel was not constitutionally ineffective for failing to raise a meritless issue on appeal, because the result of the proceeding would not have been different.  *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Additionally, appellate defense counsel stated in his affidavit during the state habeas proceedings that because there was nothing in the record to show the trial court was aware of the juror note, to show discussion of the note, or to show when the note was filed in relation to the rendering of the verdict, counsel could identify no error relating to the note.  Additionally, the jurors, when polled (twice) all confirmed their votes.  (Doc. No. 13-63, p. 26.)  The *Strickland*

standard required that appellate defense counsel research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013). Here, considering the absence of any discussion or context regarding the note, and in light of the other evidence indicating the propriety of the verdict, appellate defense counsel's judgment was not unreasonable.

Petitioner contends that he was prejudiced by appellate defense counsel's failure to raise the juror note issue because Petitioner was thereafter barred from raising the issue on habeas review. (Doc. No. 1, p. 10.) But as discussed above, Petitioner's state habeas claims regarding the juror note were not procedurally defaulted. The Texas habeas court considered and rejected those claims even though they were not raised on direct appeal. Petitioner fails to demonstrate how the Texas habeas court's decision, finding that appellate defense counsel did not perform deficiently, was unreasonable. Accordingly, Petitioner can demonstrate no prejudice from the failure to raise the juror note issue on direct appeal. No federal habeas relief is warranted.

### E. Conclusion.

For the reasons explained above, the undersigned recommends that Petitioner's habeas application be DENIED.

### F. No certificate of appealability should issue.

An appeal may not be taken to the court of appeals from a final order in a habeas proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability "may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This

determination requires an overview of the claims in the petition and a general assessment of their merits. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). The petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Id.* The district court may deny a certificate of appealability without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

Here, Petitioner fails to show that reasonable jurists would find the Court's resolution of the constitutional issues debatable or wrong. Therefore, the district court should deny a certificate of appealability.

### G. Recommendation.

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment (Doc. Nos. 14, 14-1) be GRANTED, Petitioner's 28 U.S.C. § 2254 habeas action (Doc. No. 1) be DENIED, and that the case be DISMISSED. The undersigned further recommends that Petitioner be DENIED a certificate of appealability.

SIGNED on August 21, 2023.

MITCHEL NEUROCK
United States Magistrate Judge

### NOTICE

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate

Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).